COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Malveaux and Senior Judge Annunziata
Argued at Alexandria, Virginia

UNPUBLISHED

SARIA CIVIS

                                        MEMORANDUM OPINION[*] BY

v.       Record No. 1726-17-4            JUDGE ROSEMARIE ANNUNZIATA
                                             AUGUST 21, 2018

FAUQUIER COUNTY DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Jeffrey W. Parker, Judge

Tameka N. Casey for appellant.

Robert F. Beard (Anne Wren Norloff, Guardian *ad litem* for the
minor child; Vanderpool, Frostick & Nishanian, P.C., on brief), for
appellee.

Saria Civis (mother) appeals the orders finding that her youngest child is at risk of being

abused or neglected and approving the goal of adoption. Mother argues that the circuit court erred

by (1) "making a finding that [her] child was At Risk of Abuse or Neglect" and (2) "approving the

initial foster care plan for the child with the goal of Return Home, while also approving the

permanency plan for the child with the goal of Adoption."[1] We find no error, and affirm the

decision of the circuit court.

BACKGROUND

"On appeal, 'we view the evidence and all reasonable inferences in the light most

favorable to the prevailing party below, in this case the Department.'" Farrell v. Warren Cty.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Mother included ten assignments of error in her opening brief, but withdrew all but the last
two assignments of error, which are noted above.

Dep't of Soc. Servs., 59 Va. App. 375, 386, 719 S.E.2d 329, 334 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180, 409 S.E.2d 16, 18 (1991)).

Mother and Michael Civis (father) are the biological parents of eight children, but only their youngest child is the subject of this appeal.[2] The parents have a long history of involvement with Maryland Department of Social Services, Delaware Child Protective Services, and New Jersey Division of Child Protection and Permanency. In 2011, Maryland Child Protective Services found that the children were abused or neglected. The family moved to Delaware and then New Jersey. In February 2012, the New Jersey Division of Child Protection and Permanency removed the parents' five oldest children from their custody due to inadequate shelter, food, clothing, medical care, and supervision, as well as concerns about the children's hygiene and the parents' mental health. The New Jersey Division of Child Protection and Permanency attempted to provide services to the parents, but the parents refused to cooperate. On June 15, 2015, the Superior Court of New Jersey in Atlantic County terminated mother's and father's parental rights to their five oldest children.

The parents returned to Maryland in April 2012, after New Jersey had placed their five children in foster care. In 2012 and 2013, mother gave birth to two additional children while she and father lived in Maryland. The Maryland Department of Social Services became involved with the family and attempted to provide services to the parents, but to no avail. In November 2014, the Frederick County, Maryland Department of Social Services removed the two children from the parents' care, and in December 2014, the Circuit Court for Frederick County, Maryland found that the parents' two children had been abused and neglected and were in need of assistance.

---

[2] Mother has three other children whose father is not Michael Civis. Mother testified that her three oldest children live with her mother.

In 2015, after Maryland placed the two children in foster care, the parents moved to Virginia, and in December 2015, mother gave birth to the child who is the subject of this appeal. There were no concerns about the child's health when he was born; however, he subsequently developed jaundice. The Department received a child protective services referral from the hospital due to concerns about the parents' mental health and that they previously had had children removed from their care. A social worker met the parents and the child at the hotel where they were staying. A few days later, the Department contacted the Frederick County, Maryland Department of Social Services and learned the parents' other children had been removed in Maryland and New Jersey. Due to concerns about the child being at risk for abuse or neglect based on the prior terminations, the Department removed the youngest child from the parents' custody on December 28, 2015. When the child came into the Department's care, he was "very jaundiced" and required immediate hospitalization for treatment.

In 2016, Maryland terminated the parents' rights to their two children. On January 20, 2016, the Fauquier County Juvenile and Domestic Relations District Court (the JDR court) entered an order finding the child was at risk of being abused or neglected. On January 27, 2016, the Department filed a foster care plan with the goal of adoption because of the previous involuntary terminations. of the parents' parental rights to five of their children in New Jersey and the entry of foster care plans with goals of adoption for the two children in Maryland.

The Department referred mother for a psychological evaluation. On March 23, 2016, Dr. Edwin Carter met with mother for the evaluation and, subsequently, prepared a report that explained his findings and conclusions. Based on tests and an interview of the mother, Dr. Carter concluded that mother was not "capable at this point in time of independently raising a child." He described mother as having "significant cognitive difficulties, "as well as

- 3 -

"significant limitations in her ability to think and reason logically," and found mother to be "extremely limited in all aspects of functioning."

On July 12, 2016, the JDR court entered a dispositional order noting the adjudication of the risk of abuse or neglect and approving the foster care plan with the goal of adoption. Mother and father appealed the dispositional order to the circuit court.

On August 9, 2017, the parties appeared before the circuit court. The Department offered into evidence copies of the court orders from Maryland and New Jersey regarding the parents' other seven children. The Department presented expert testimony from Dr. Carter, as well as his written reports, opining that mother was incapable of providing adequate care for the child and was unable to consistently provide a safe environment for the child. That inability was largely due to mother's significant cognitive impairment, which is essentially a fixed condition. The Department also presented evidence that the child was "doing really well" in foster care and was "on track developmentally."

Mother testified about the child's health and jaundice condition after he was born. She explained that they had scheduled a doctor's appointment for the child for December 29, 2015, which was the day after the Department removed the child from her care. She testified that she and father had a three-year lease on a home in Maryland. She also described her work history and employment skills. She was not working at the time of the hearing, but most recently had been employed at a TA truck stop in Maryland as a line cook, a position from which she said she had been laid off on May 1, 2017 because business had been slow. As of the circuit court hearing, she expected to receive social security benefits "in the next month or so." Mother further testified that she had participated in parenting classes and counseling.

After hearing the evidence and argument, the circuit court found that the child was at risk of abuse or neglect and approved the goal of adoption. This appeal followed.[3]

ANALYSIS

Mother argues that the circuit court erred in finding that the child was at risk of abuse or neglect because the Department did not meet its burden of proving by a preponderance of the evidence that the child was at risk of abuse or neglect. Mother also argues that the circuit court erred in "approving the initial foster care plan for the child with the goal of Return Home, while also approving the permanency plan for the child with the goal of Adoption." Mother contends that there was no evidence "to demonstrate that the child's interests would be better served by adoption than by returning it to the parents."

Rule 5A:20(e) mandates that an appellant's opening brief include "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." In her brief, mother cited only Richmond Dep't of Soc. Servs. v. Carter, 28 Va. App. 494, 507 S.E.2d 87 (1998), to support her arguments. In Carter, this Court held that in cases of a foster care plan review, the Department had to prove its case by the preponderance of the evidence. Id. at 496-97, 507 S.E.2d at 88. Mother's assignments of error do not challenge the circuit court's decision based on an erroneous burden of proof; instead the assignments of error challenge the circuit court's finding of abuse or neglect and the approval of the goal of adoption. Mother did not comply with Rule 5A:20(e) because her opening brief did not contain any principles of law, or citation to legal authorities, including the governing statutes, to fully develop her arguments.

---

[3] Father also appealed the circuit court's rulings. See M. Civis v. Fauquier Cty. Dep't of Soc. Servs., Record No. 1560-17-4.

Mother has the burden of showing that the circuit court committed reversible error. See Burke v. Catawba Hosp., 59 Va. App. 828, 838, 722 S.E.2d 684, 689 (2012). "Unsupported assertions of error do not merit appellate consideration." Fox v. Fox, 61 Va. App. 185, 199-200, 734 S.E.2d 662, 669 (2012) (quoting Jones v. Commonwealth, 51 Va. App. 730, 734, 660 S.E.2d 343, 345 (2008)). "Further, it is not the function of this Court to 'search the record for error in order to interpret the appellant's contention and correct deficiencies in a brief.'" West v. West, 59 Va. App. 225, 235, 717 S.E.2d 831, 835 (2011) (quoting Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992)). "Nor is it this Court's 'function to comb through the record . . . in order to ferret-out for ourselves the validity of [appellant's] claims.'" Burke, 59 Va. App. at 838, 722 S.E.2d at 689 (quoting Fitzgerald v. Bass, 6 Va. App. 38, 56 n.7, 366 S.E.2d 615, 625 n.7 (1988) (*en banc*)).

We find that mother's failure to comply with Rule 5A:20(e) is significant, so we will not consider her assignments of error. See Fadness v. Fadness, 52 Va. App. 833, 851, 667 S.E.2d 857, 866 (2008) ("If the parties believed that the circuit court erred, it was their duty to present that error to us with legal authority to support their contention."); Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed. This case is remanded to the circuit court to remand to the JDR court for any further action as the case may require.

Affirmed and remanded.