COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Clements and Beales
Argued at Richmond, Virginia


NORFOLK DIVISION OF SOCIAL SERVICES

                                                   MEMORANDUM OPINION* BY
v.       Record No. 1697-07-1                CHIEF JUDGE WALTER S. FELTON, JR.
                                                         APRIL 29, 2008
SERENA MONROE


                    FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                                      Alfred M. Tripp, Judge

                Martha G. Rollins, Deputy City Attorney (Bernard A. Pishko, City
                Attorney; Office of the City Attorney, on briefs), for appellant.

                Harry Dennis Harmon, Jr.; Bruce C. Sams, Guardian *ad litem* for the
                minor children, for appellee.


        The Norfolk Division of Social Services (NDSS) appeals the trial court's denial of its

petition to terminate Serena Monroe's (mother) residual parental rights to her children, R. and K.

NDSS contends the trial court applied an incorrect standard in granting mother's motion to strike its

evidence at the conclusion of its case-in-chief.  NDSS also contends the trial court erred in refusing

to consider four documents related to the initial removal of R. and K. from mother's home for

neglect in June 2003.  For the following reasons, we reverse the decision of the trial court and

remand for such further proceedings as NDSS may deem appropriate.

        Because the parties below are conversant with the record in this case, and this opinion

carries no precedential value, we cite only those facts necessary for the disposition of this appeal.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

In June 2003, R. and K., maternal half-siblings, were removed from mother's custody and placed into foster care as a result of mother's drug abuse and neglect of their care. Mother, who has a history of drug abuse, regained custody of R. and K. for short periods of time in 2005. However, the children remained in NDSS's custody for sixteen of the twenty-two months between their initial removal from her custody in June 2003, and their final removal in August 2005.[1] On December 14, 2006, the Norfolk Juvenile and Domestic Relations District Court (district court) entered an order terminating mother's residual parental rights to both children, and approved foster care plans with a goal of adoption for each. Mother appealed the district court's rulings of both the termination of her residual parental rights to R. and K. and the approval of foster care plans for adoption.[2]

On appeal of the district court's rulings, the trial court excluded four documents NDSS offered as evidence, ruling those documents not relevant because they referred to events that took place prior to the children's return to mother's custody in April 2005. It also granted mother and the guardian *ad litem's* (GAL) motions to strike NDSS's evidence at the conclusion of its case-in-chief, but approved, without comment, the foster care plans with a goal of adoption for both R. and K.[3] This appeal followed.

---

[1] In February 2005, R. and K. were returned to mother, but were removed again in March 2005, returned to her in April 2005, and removed again in August 2005. The children have remained continually in foster care since August 2005.

[2] Residual parental rights for both R. and K.'s fathers were terminated at an earlier proceeding.

[3] Neither party appealed the trial court's ruling approving the foster care plans for adoption of the children.

II.  ANALYSIS

NDSS contends that the trial court applied an incorrect standard in granting the motions to strike its evidence at the conclusion of its case-in-chief, arguing that its evidence established a *prima facie* case for termination of mother's residual parental rights.  "[W]hen the sufficiency of a plaintiff's evidence is challenged upon a motion to strike the evidence at the conclusion of the plaintiff's case-in-chief, the trial court should in every case overrule the motion where there is any doubt on the question."  Washburn v. Klara, 263 Va. 586, 590, 561 S.E.2d 682, 685 (2002) (citations omitted).  "The trial court must also 'give the plaintiff the benefit of all substantial conflict in the evidence, and all fair inferences that may be drawn therefrom.'"  Id. (quoting Hadeed v. Medic-24, Ltd., 237 Va. 277, 285-86, 377 S.E.2d 589, 593 (1989)).

"'In ruling on a motion to strike, trial courts should not undertake to determine the truth or falsity of testimony or to measure its weight.'"  Higgins v. Bowdoin, 238 Va. 134, 141, 380 S.E.2d 904, 908 (1989) (quoting Williams v. Vaughan, 214 Va. 307, 310, 199 S.E.2d 515, 517-18 (1973)).  Rather, the trial court must determine "whether the conclusion the plaintiff draws from the evidence would so 'defy logic and common sense' that no rational factfinder could adopt it."  Cent. Va. Obstetrics & Gynecology Assoc., P.C. v. Whitfield, 42 Va. App. 264, 275 n.7, 590 S.E.2d 631, 637 n.7 (2004) (quoting Upper Occoquan Sewage Auth. v. Blake Constr., 266 Va. 582, 590 n.6, 587 S.E.2d 721, 725 n.6 (2003)).  On appeal,

> [t]he standard for reviewing a plaintiff's evidence on a motion to strike evaluates whether plaintiff has made a *prima facie* case; that is, accepting plaintiff's evidence as true and granting to it all reasonable inferences that can be derived therefrom, the trial court must determine whether it is "conclusively apparent that plaintiff has proven no cause of action against defendant."  Williams, 214 Va. at 309, 199 S.E.2d at 517.

Klein v. Klein, 49 Va. App. 478, 481, 642 S.E.2d 313, 315 (2007).

In determining whether NDSS established a *prima facie* case for termination of mother's residual parental rights, we consider what NDSS was required to prove in order to authorize the trial court to terminate mother's residual parental rights to each of the children. Code § 16.1-283(C)(2) provides in pertinent part:

> The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment, . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

> \*　　\*　　\*　　\*　　\*　　\*　　\*

> 2. The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

Here, NDSS presented evidence establishing that after R. and K. were returned to mother's custody in April 2005, the children were again removed from her custody four months later, after mother tested positive for drugs. The social worker assigned to the case testified that since April 2005, mother failed to: (1) complete some of the substance abuse treatment and rehabilitation programs offered to her; (2) remain in regular contact with her visitation coach; and (3) was unsuccessful in her attempts to comply with NDSS's requirements for maintaining visitation and services. Moreover, the trial court improperly rejected as not being relevant the

- 4 -

four documents that described the history of the two children in foster care, evidence relevant to whether mother had made satisfactory progress pursuant to Code § 16.1-283(C)(2) to substantially eliminate the conditions that led to the placement of the children in foster care. See L.G. v. Amherst County Dept. of Soc. Servs., 41 Va. App. 51, 57, 581 S.E.2d 886, 889 (2003) ("[t]he time limit does not, [] temporally restrict the trial court's consideration to events that occurred between the parent and child only during that discrete twelve-month time period to the exclusion of what may have occurred before and after those dates"). See also Code § 16.1-283(C)(2) ("The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care"). The excluded documents were relevant to establish mother's pattern of drug abuse, including at least four positive drug screens, as well as mother's struggles to provide adequate food, shelter, and supervision for R. and K., evidence that supported NDSS's petition to terminate mother's residual parental rights.

The record reflects that in granting mother's motion to strike NDSS's evidence, the trial court stated that NDSS failed to make a *prima facie* showing that mother's unsuccessful attempts to rehabilitate herself were "without good cause."[4] However, the evidence presented by NDSS, if believed, was sufficient to establish mother's repeated failures at rehabilitation over several years were without good cause. Evidence presented by NDSS, and taken in light most favorable to it, demonstrates that when R. and K.'s maternal grandmother died, mental health services were available to mother and that NDSS made arrangements for the children to spend time with

---

[4] During cross-examination of R. and K.'s social worker, mother asked how NDSS addressed two events in her life: the death of her mother and being the victim of rape. Because the motion to strike the evidence was granted at the conclusion of NDSS's case-in-chief, there is no evidence from mother regarding these events and how they were "good cause" of her inability to make substantial progress to remedy the conditions for which the children were placed in foster care.

mother during that period of her grief, even though they remained in foster care. NDSS also presented evidence in its case-in-chief that, if believed, established that although it did not learn of mother's 2005 rape until December 2006, mental health services were available for mother in 2005 when the incident occurred. Moreover, that same evidence showed that even if NDSS had been made aware of the rape, it had no way of contacting mother as she failed to notify NDSS of her location.

From our review of the evidence in the record, we conclude that the evidence NDSS presented to the trial court, when viewed in the light most favorable to NDSS and accepted as true, precludes a finding that "[NDSS] has proven no cause of action against [mother]." Klein, 49 Va. App. at 481, 642 S.E.2d at 315 (quoting Williams, 214 Va. at 309, 199 S.E.2d at 517). The evidence showed that despite NDSS's efforts at rehabilitation, mother's ongoing substance abuse rendered her unable to "make substantial progress towards elimination of the conditions which required continuation of [R. and K.'s] placement in foster care," and mother's inability to make substantial progress was "without good cause." Code § 16.1-283(C)(2).[5] Because the evidence was sufficient to establish a *prima facie* case sufficient for the termination of mother's residual parental rights under Code § 16.1-283(C)(2), we conclude that the trial court erred in granting the motion to strike at the conclusion of NDSS's case-in-chief. Accordingly, we reverse the trial court's judgment to dismiss the petition of NDSS to terminate mother's residual parental rights, and remand to the trial court for such additional proceedings as NDSS may deem appropriate.

---

[5] Because we conclude the trial court erred in striking NDSS's evidence under Code § 16.1-283(C)(2), we do not address whether it erred in striking the evidence under Code § 16.1-283(B)(2).

## III.  CONCLUSION

We conclude from the record on appeal that the trial court erred in granting mother's motion to strike the NDSS's evidence at the conclusion of its case-in-chief.  We reverse the judgment of the trial court dismissing NDSS's petition for termination of mother's residual parental rights to R. and K., and remand to the trial court for such additional proceedings as NDSS may deem appropriate.

<u>Reversed and remanded.</u>